**Sharon PUCKETT, Plaintiff–Appellant, Cross–Appellee,**

v.

**TENNESSEE EASTMAN COMPANY, Defendant–Appellee, Cross–Appellant.**

Nos. 88–5328, 88–5415.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 14, 1989.

Decided Nov. 7, 1989.

David W. Blankenship, argued, William K. Rogers, Frank B. Dodson, Kingsport, Tenn., for plaintiff-appellant cross-appellee.

Hiram G. Tipton, George O. Burpeau, III, Tennessee Eastman Co. Legal Dept., Kingsport, Tenn., Homer L. Deakins, Jr., argued, Richard R. Parker, Margaret H. Campbell, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, Ga., for defendant-appellee cross-appellant.

Before GUY and NORRIS, Circuit Judges, and BELL, District Judge.[*]

ALAN E. NORRIS, Circuit Judge.

Plaintiff, Sharon Puckett, appeals from the district court's grant of summary judgment to defendant, Tennessee Eastman Company, in this action involving allegations of sexual harassment. Puckett asserted several different claims in her complaint, including claims under the Tennessee Anti–Discrimination Act, Tenn.Code Ann. § 4–21–101 et seq., Title VII of the Civil Rights Act of 1964, and the Organized Crime Control Act of 1970. On appeal, Puckett argues that the district court erred in determining that (1) her claim under the state act is barred as untimely; (2) receipt of a right-to-sue letter is a jurisdictional prerequisite to a Title VII action; and (3) her civil RICO claim should be dismissed since separate and distinct entities serving as the "person" and the "enterprise" had not been identified, and obstruction of a state administrative proceeding will not suffice to establish a "pattern of racketeering activity." We reject Puckett's arguments and affirm the district court's decision.

I.

On February 24, 1982, Sharon Puckett filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging that she was sexually harassed during 1981 and 1982. Specifically, she alleged that she was subjected to sexual harassment by her supervisor at Tennessee Eastman Company ("Eastman"), and that, because she rejected his advances, she was given poor evaluations, fewer raises, and was denied transfers. Puckett filed another charge of discrimination with the EEOC and the THRC in 1982, alleging retaliation by Eastman in March and April 1982 for her having filed the first discrimination charge. The THRC investigated the charges and, on May 28, 1985, issued a determination finding reasonable cause to believe sexual harassment had occurred. However, it was also determined that there was no reasonable cause to believe that her poor evaluations, slow advancement, or denial of transfers were related to the sexual harassment, or that she was retaliated against. The THRC called upon the parties to make an effort to conciliate the matter.

After conciliation attempts proved unsuccessful, Puckett requested the withdrawal of her charges on February 13, 1986. On May 1, 1986, the THRC closed its file on

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

Puckett's complaint. The EEOC also accepted Puckett's request and closed its file. Puckett initiated this action on May 12, 1986, by filing a complaint in the Circuit Court of the Second Judicial District of the State of Tennessee. The complaint alleged discrimination in violation of Title VII and the Tennessee Anti–Discrimination Act, Tenn.Code Ann. § 4–21–101 *et seq.* Eastman removed the action to the United States District Court for the Eastern District of Tennessee on June 11, 1986. On May 18, 1987, Puckett filed an amended complaint, adding claims alleging violation of civil RICO, conspiracy under 42 U.S.C. § 1985, and the torts of outrageous conduct and intentional infliction of emotional distress.

On January 26, 1988, Eastman filed a motion to dismiss and for summary judgment. The court granted Eastman's motion on March 11, 1988. In dismissing all of Puckett's claims, the district court held: (1) Puckett's claim under the Tennessee Anti–Discrimination Act is barred by the applicable one-year limitations period; (2) she did not meet the Title VII prerequisite of receiving a right-to-sue letter; (3) she failed to state a claim under 42 U.S.C. § 1985 because a corporation cannot conspire with itself or its employees to deprive a person of civil rights; (4) Puckett's tort claims are precluded by the exclusive remedies provision of the state's workers' compensation law and is time-barred by the applicable one-year statute of limitations; and (5) the claim of a violation of RICO must be dismissed since Puckett failed to identify separate entities serving as the "enterprise" and the "person," and obstruction of a state administrative proceeding is an insufficient predicate act. This appeal followed.

## II.

■ The district court determined that Puckett's claim under the Tennessee Anti–Discrimination Act ("the Act"), Tenn.Code Ann. § 4–21–101 *et seq.*, is precluded by a judicially imposed one-year limitations period on claims brought pursuant to Tenn. Code Ann. § 4–21–311. *See Hoge v. Roy H. Park Broadcasting of Tennessee, Inc.*, 673 S.W.2d 157 (Tenn.App.1984). It was noted that Puckett's complaint alleges discriminatory acts that occurred in 1981–82, but that her suit was not commenced until 1986. Puckett contends that, although a one-year limitations period has been applied to civil actions under the Act, Tennessee law is unsettled concerning whether this limitations period is subject to equitable tolling.

As the district court correctly noted, the Act provides two avenues of redress for employment discrimination. First, under Tenn.Code Ann. § 4–21–302 [1], an individual

---

1. This section, in whole, provides:

**4–21–302. Complaints—Consideration by commission.**—(a) A person claiming to be aggrieved by a discriminatory practice, or a member of the commission may file with the commission a written sworn complaint stating that a discriminatory practice has been committed, setting forth the facts sufficient to enable the commission to identify the persons charged (hereinafter the respondent).

(b) The commission staff, or a person designated pursuant to its rules, shall promptly investigate the matter to determine whether the discriminatory practice exists and shall within ten (10) days furnish the respondent with a copy of the complaint.

(c) The complaint must be filed within one hundred eighty (180) days after the commission of the alleged discriminatory practice.

(d) The commission shall determine within sixty (60) days after the complaint has been filed whether there is reasonable cause to believe that the respondent has engaged in a discriminatory practice. If it is determined that there is no reasonable cause to believe that the respondent has engaged in a discriminatory practice, the commission shall furnish a copy of the order to the complainant, the respondent, and such public officers and persons as the commission deems proper.

(e) The complainant, within thirty (30) days after receiving a copy of the order dismissing the complaint, may file with the commission an application for reconsideration of the order. Upon such application, the commission or an individual designated pursuant to its rules shall make a new determination within thirty (30) days whether there is reasonable cause to believe that the respondent has engaged in a discriminatory practice. If it is determined that there is no reasonable cause to believe that the respondent has engaged in a discriminatory practice, the commission shall issue an order dismissing the complaint after reconsideration, and furnishing a copy of the order to the complainant, the respon-

claiming to be aggrieved by a discriminatory practice may file an administrative complaint with the THRC within 180 days after the commission of the alleged discriminatory practice. The THRC is then given sixty days in which to determine whether there is reasonable cause to believe that the employer was engaged in a discriminatory practice. If the administrative determination is unfavorable to the aggrieved individual, he or she may file a petition in chancery court to obtain judicial review pursuant to § 4–21–307, but the petition must be filed within thirty days after the THRC issues its order.

Second, an aggrieved individual, without exhausting the administrative remedies, may file a direct action in chancery court pursuant to Tenn.Code Ann. § 4–21–311, which reads:

> **Additional remedies preserved.**—Any person deeming himself or herself injured by any act in violation of the provisions of this chapter shall have a civil cause of action in chancery court to enjoin further violations, and to recover the actual damages sustained by him or her, together with the costs of the lawsuit, including a reasonable fee for his or her attorney of record, all of which shall be in addition to any other remedies contained in this chapter.

Although the limitations period for the filing of an administrative complaint, as well as the timing for other steps of the administrative process, is set forth in the statute, it is apparent that there is no statute of limitations set forth for direct actions in chancery court in § 4–21–311. The question of an appropriate statute of limitations for actions under § 4–21–311 was thus a matter left for judicial determination.

A federal court first addressed the issue of the appropriate limitations period for actions under § 4–21–311. In *Roland v. Kroger Co.*, No. CIV–1–82–394 (E.D.Tenn. May 13, 1983), the United States District Court for the Eastern District of Tennessee, basing jurisdiction over a claim under § 4–21–311 on diversity of citizenship, held that the 180–day limitations period in § 4–21–302 for filing an administrative action with the THRC applied to direct actions in chancery court as well. In addition, the district court decided that this 180–day limitations period would be tolled by the filing of an administrative charge with the EEOC or THRC, and extended by at least ninety days after exhaustion of the administrative remedies. The district court reasoned that an employer would be prejudiced by the loss of evidence if a limitations period greater than 180 days was chosen, but that, if an administrative charge was filed, notice to preserve evidence would be given to the employer and the limitations period could therefore be tolled.

In *Hoge v. Roy H. Park Broadcasting of Tennessee, Inc.*, a panel of the Court of Appeals of Tennessee developed a different limitations scheme. The state court held that the appropriate limitations period is a one-year statute of limitations drawn by reference to Tennessee's general statute of limitations for actions alleging a violation of the federal civil rights statutes, Tenn. Code Ann. § 28–3–104.[2] The *Hoge* court reasoned that, because a direct chancery court action is clearly foreign to the conventional administrative scheme for addressing discriminatory conduct, administrative time limits should not be adopted by analogy. Rather, the applicable statute of limitations should be determined by the substance of the complaint, which is a violation of the federal civil rights statutes. In a footnote, the court took note of the split of authority in the federal courts as to whether the limitations periods for federal

---

dent, and such public officers and persons as the commission deems proper. [Acts 1978, ch. 748, § 17; Tenn.Code Ann., §§ 4–2115, 4–21–115.]

2. This section, in pertinent part, provides:
   **28–3–104. Personal tort actions.**—(a) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, criminal conversation, seduction, breach of marriage promise, actions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort, civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes, and actions for statutory penalties shall be commenced within one (1) year after cause of action accrued.

civil rights actions are subject to equitable tolling. 673 S.W.2d at 160 n. 2. This issue, however, was not before the court in *Hoge*.

Following *Hoge*, another panel of the Court of Appeals of Tennessee, in an unpublished decision, interpreted the Act to force the aggrieved individual to make an election between the administrative remedy, with judicial review, and a direct action in chancery court. In *McClure v. Bush Bros. & Co.*, No. 53, 1987 WL 18906 (Tenn. App. Oct. 27, 1987), the court stated: "It seems to us, that once having pursued his claim to an administrative conclusion, whether favorable or adverse, an employee would not be entitled to avail himself of the other option." The *McClure* court thus read the Act to impose an election of remedies requirement on an aggrieved individual. However, a somewhat different conclusion has been reached in a recent decision of another panel of the Tennessee Court of Appeals. In *McClements v. North American Phillips Consumer Electronics Corp.*, No. 1273, 1989 WL 61274 (Tenn.App. June 9, 1989), the court stated that "the mere filing of an administrative complaint, without more, ought not to be destructive of his direct Chancery action." Slip op. at 4–5. The court "emphasize[d] that the Commission simply abandoned the complaint," and indicated that an election would be appropriately found at least where the THRC had proceeded to a determination of reasonable cause/no reasonable cause, as in *McClure*. In the court's view, the nature of the chancery court action as a discrete and additional remedy compelled a conclusion that the legislature did not intend the commencement of administrative proceedings to operate as an election and foreclose a judicial remedy.

Puckett argues, disregarding to a large extent the decisions of the Tennessee Court of Appeals and relying upon *Roland*, that the limitations period is subject to equitable tolling by the filing of an administrative claim. Further, Puckett contends that her claim was timely filed in chancery court, as her complaint was brought seven days after she received notice from the Commission of the closing of her file. Puckett

states that the district court's approach penalizes the employee for pursuing administrative channels, including conciliation, which is a remedy favored by Congress.

Eastman responds that *Roland* predated *Hoge* and applied a completely different limitations scheme. Eastman states that a federal court is "bound to apply the definitive statements of Tennessee state law as pronounced by the Tennessee courts," and that the combination of *Hoge* and *McClure* forecloses any doubt that the one-year limitations period is not tolled by the filing of an administrative charge—indeed, the administrative filing bars any direct action in chancery court. Further, Eastman argues that it is apparent from the statute that the direct action is a distinct right and, thus, there is no basis for tolling the period during the pendency of administrative proceedings.

■ Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1140 (6th Cir.1986). This rule applies regardless of whether the appellate court decision is published or unpublished. *Id.* Thus, in this case, this court may not disregard the decisions in *Hoge*, *McClure*, and *McClements*, which postdated the district court's opinion in *Roland*. Puckett's arguments premised on the limitations scheme described in *Roland* are therefore unavailing.

Because the appropriate limitations period is one year, under the circumstances of this case, where Puckett chose the administrative route and followed it through to the conciliation stage, a direct action in chancery court is barred. It is now established by *Hoge* that Tenn.Code Ann. § 28–3–104, the general statute of limitations for claims asserting a violation of federal civil rights, is applicable in actions under Tenn.Code Ann. § 4–21–311. Further, the Tennessee courts have read the Act to force an election between the administrative remedy and the judicial remedy, at least where an

aggrieved individual has initiated the administrative process and pursued it to an administrative conclusion. With this much, both *McClure* and *McClements* are in agreement.

In this case, it is apparent that the administrative wheels started and continued turning. An administrative investigation of the charges was undertaken, and the process proceeded to a conclusion that there was reasonable cause to believe that sexual harassment had occurred, but that there was no evidence that Puckett's poor evaluations, lack of raises and denial of transfers were caused by her rejecting the sexual advances of her supervisor. The THRC ordered the parties to engage in conciliation efforts, but, when this method did not produce the desired results, Puckett withdrew her complaint and filed the chancery court action. In effect, Puckett attempted a "second bite at the apple," having been left unsatiated by the administrative process. However, once the administrative process had been pursued past the initial administrative conclusion that no actionable violation exists, Tennessee courts have made clear that the only way to get to court is through an administrative appeal. In sum, we find that any direct action in court was barred under Tennessee law under the circumstances of this case.

### III.

■ The district court dismissed Puckett's claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, on the ground that nothing in the record indicated that she had requested or received a right-to-sue letter from the EEOC. Puckett argues that a right-to-sue letter is not a jurisdictional prerequisite to a Title VII action but rather a condition precedent, and thus the requirement may be waived on equitable grounds.

■ The Title VII plaintiff satisfies the prerequisites to a federal action (1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notice of the right to sue. 42 U.S.C. § 2000e-5(f)(1); *McDonnell–Douglas*

*Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). The question presented in this appeal concerns whether these preconditions to a Title VII suit are jurisdictional prerequisites which, if not met, operate to divest a federal court of jurisdiction or, instead, are conditions precedent similar to a statute of limitations, which are subject to waiver, estoppel, and equitable tolling. It is now established that the precondition of filing charges with the EEOC within the statutory time limit is not a jursidictional prerequisite; this dispute raises the same issue with respect to the requirement that the plaintiff obtain from the EEOC a notice of right to sue.

In *Zipes v. Trans World Airlines*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court addressed whether Congress intended that the timely filing requirement of Title VII, 42 U.S.C. § 2000e-5(e), operate as a statute of limitations as opposed to a jurisdictional prerequisite. In that case, a class action was brought to challenge Trans World Airlines' alleged policy of grounding female flight attendants who became mothers, while permitting new fathers to continue flying. Although initially a settlement was reached between TWA and the union representing the flight attendants and approved by the district court, the Seventh Circuit regarded the union as an inadequate class representative and therefore remanded the case with instructions to replace the union as class representative with individual members of the class. Upon remand, TWA asserted that the claims of class members who had not filed charges with the EEOC within the statutory time limit were barred on the ground that the timely filing requirement is a jurisdictional prerequisite. The Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132.

The Court stated three grounds as a basis for its decision: (1) structurally, the timely filing provision of Title VII appears

as a provision separate from the jurisdictional provision; (2) legislative history indicates that Congress contemplated the filing period to be a "time limitation" subject to interpretation and equitable modification; and (3) although previous decisions of the Court where the character of the filing requirement was not at issue contain references to the requirement as both a jurisdictional prerequisite and a limitations statute, the reasoning of other cases presupposes that the requirement is not jurisdictional. *Id.* at 393–98, 102 S.Ct. at 1132–35. Thus, in its first express consideration of whether a precondition to the bringing of a Title VII action is a jurisdictional prerequisite, the Supreme Court indicated that the timely filing requirement can be analogized to a statute of limitations in that the requirement is subject to waiver, estoppel, and equitable tolling.

Subsequently, in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam), the Court clarified its holding in *Zipes* to discourage an overly expansive reading of the earlier opinion. The Court cautioned against reading the timely filing requirement out of Title VII through liberal application of the doctrines of equitable tolling, stating that "we did not in *Zipes* declare that the requirement need not ever be satisfied; we merely stated that it was subject to waiver and tolling." *Id.* at 152 n. 6, 104 S.Ct. at 1726 n. 6. Although under limited circumstances principles of equity may apply to excuse strict adherence to the statutory filing period, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Id.* at 152, 104 S.Ct. at 1726.

*Zipes* did not address whether the prerequisite of receiving a right-to-sue letter should also be construed as a condition precedent. Subsequent to *Zipes*, though, every circuit presented with the issue has decided that the receipt of a right-to-sue letter prior to the filing of a Title VII action is not a jurisdictional prerequisite, but rather a precondition subject to equitable tolling and waiver. *Jones v. Amer-*ican State Bank, 857 F.2d 494, 499–500 (8th Cir.1988); *Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1351 (9th Cir.1984); *Williams v. Washington Metropolitan Area Transit Auth.*, 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983); *Liberles v. County of Cook*, 709 F.2d 1122, 1125 (7th Cir.1983); *Pinkard v. Pullman–Standard*, 678 F.2d 1211 (5th Cir.1982) (per curiam), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983). In *Pinkard*, two plaintiffs filed an action in the district court a mere four days after filing charges with the EEOC. Neither plaintiff had, of course, received a right-to-sue letter from the EEOC at the time the suit was filed, but each ultimately did receive such notice approximately four months before trial. The district court dismissed the claims, holding that, as a result of the premature filing, it lacked jurisdiction to hear the plaintiffs' Title VII claims. Relying upon *Zipes*, the Fifth Circuit stated that application of the factors considered by the Court compelled a holding that the requirement of receiving a right-to-sue letter is not a jurisdictional prerequisite. First, the jurisdictional provision of Title VII is separate from the section imposing the right-to-sue notice requirement. Second, it was noted that the sparse legislative hisotry is of little assistance. Finally, the Fifth Circuit reviewed its prior case law as well as that of the Supreme Court, and determined that exhaustion of the statutory waiting period (which was designed to allow the administrative process an opportunity to reach a conciliation) with the consequent issuance of a right-to-sue notice has not been required for a federal court to exercise jurisdiction. It was noted that Title VII relief has been granted to class members in class actions who had not received the statutory letter, and that the ninety-day time limit for filing a suit after receiving the right-to-sue letter has not been considered jurisdictional. The Court also noted the remedial purposes of Title VII which could be furthered through its interpretation, and stated:

A Title VII action filed prior to the receipt of statutory notice of the right to sue does not preclude the EEOC from performing its administrative functions, and it is unlikely that permitting the subsequent receipt of a right-to-sue letter to cure the filing defect will encourage plaintiffs to attempt to bypass the administrative process because premature suits are subject to a motion to dismiss at any time before notice of the right to sue is received.

*Id.* at 1218. The Court concluded that receipt of a right-to-sue letter is a condition precedent subject to equitable modification.

We leave for another day the question of whether, in this circuit, the prerequisite to a Title VII action of receipt of a right-to-sue notice is a jurisdictional prerequisite or a condition precedent, as it is clear that, regardless of the character of the precondition, Puckett's Title VII claim was properly dismissed. First, although Puckett claims to have requested a right-to-sue letter, the district court found that she merely filed a request to withdraw her charges and did not request a right-to-sue letter. Apparently construing the statutory notice requirement as jurisdictional, the district court therefore held that Puckett's Title VII claim must be dismissed. If this prerequisite is to be considered jurisdictional, the district court's reasoning obviously is correct.

If the prerequisite of receiving a right-to-sue letter is to be construed as a condition precedent, Puckett has offered no circumstances under which she is entitled to waiver, estoppel, or equitable tolling. In *Baldwin County*, the Supreme Court indicated examples of circumstances in which equitable tolling would be justified:

> This is not a case in which a claimant has received inadequate notice; or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; or where the court has led the plaintiff to believe that she had done everything required of her. Nor is this a case where affirmative misconduct on the part of a defendant lulled the plain-

tiff into inaction. The simple fact is that Brown was told three times what she must do to preserve her claim, and she did not do it. One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.

*Baldwin County,* 466 U.S. at 151, 104 S.Ct. at 1725 (citations omitted). We believe that this case is closer to the situation posited by the *Baldwin County* Court, that of the plaintiff who contends that "the requirement need not ever be satisfied," than to any of the circumstances listed above. Puckett could have, at any time after the initial 240–day waiting period, requested a right-to-sue letter from the EEOC. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 63–66, 100 S.Ct. 2024, 2030–32, 64 L.Ed.2d 723 (1980). Although she was absolutely entitled to the issuance of such a notice, she apparently did not want it. Instead, Puckett merely requested withdrawal of her EEOC charges, and the EEOC accepted the withdrawal, after which she instituted this suit. Such a decision flouts the statutory requirement of receipt of a right-to-sue letter, and amounts to a position of arrogance regarding the statutory requirement as mere surplusage. Equitable tolling or waiver, as *Baldwin County* made clear, is available only in compelling circumstances which justify a departure from established procedures. Thus, we conclude that a right-to-sue letter was a necessary prerequisite to filing suit pursuant to Title VII under the circumstances of this case.

## IV.

The district court dismissed Puckett's civil RICO claim on the grounds that Puckett had not identified separate entities serving as the "enterprise" and the "person" for purposes of 18 U.S.C. § 1962(c), and that the obstruction of a state administrative proceeding is an insufficient predicate act to establish a "pattern of racketeering activity."

Puckett bases her civil RICO claim on 18 U.S.C. § 1962(c), which states:

> It shall be unlawful for any person employed by or associated with any enter-

prise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

It is plain that the language of this subsection precludes the "person" conducting or participating in an enterprise's affairs from simultaneously serving as the "enterprise." *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1150 n. 2 (10th Cir.1989). Because § 1962(c) requires separate legal entities as the "person" and the "enterprise," courts are in substantial agreement that a corporation cannot be named as the liable "person" and simultaneously fulfill the "enterprise" requirement as well. *See, e.g., id.* at 1150; *Schofield v. First Commodity Corp.*, 793 F.2d 28, 29–30 (1st Cir. 1986) (collecting cases); *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–34 (3d Cir.1984); *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 399–402 (7th Cir.1984); *cf. United States v. Hartley*, 678 F.2d 961 (11th Cir.1982), *cert. denied*, 459 U.S. 1170 & 1183, 103 S.Ct. 815 & 834, 74 L.Ed.2d 1014 & 1027 (1983). For her civil RICO claim under § 1962(c) to survive, therefore, Puckett must identify an entity separate from Eastman with which Eastman may interact in the manner the statute contemplates.

■ Although Puckett, on appeal, argues strenuously that the corporation acted in concert with its own employees acting outside the scope of their employment, this assertion is at odds with the assertion repeated throughout her complaint that Eastman acted "by and through" its employees in obstructing the state administrative proceedings. Indeed, Puckett cites nothing in the pleadings to support her assertion that "[t]he acts of sexual harassment and the subsequent cover-up were committed by employees of employer acting outside the scope of her employment." Puckett's argument on appeal is somewhat incredible, as it is apparent that, in arguing that Eastman acted "by and through" its employees, Puckett earlier contemplated only *one* entity, the corporation, acting in the only manner it is possible for a corporation to act, through its employees. The distinct entities that represent the "person" and the "enterprise" must be described in the pleadings. *Fleischhauer v. Feltner*, 879 F.2d 1290, 1296–97 (6th Cir.1989). Under the circumstances of this case, it is clear that Puckett has alleged that Eastman is both the "person" and the "enterprise" for purposes of her § 1962(c) claim, and therefore her civil RICO count was properly dismissed.

■ In addition, we agree with the district court that Puckett has failed to state a RICO claim as a result of her inability to allege a "pattern of racketeering activity." Section 1961(1) defines "racketeering activity" for purposes of § 1962(c) by reference to specific federal criminal statutes. Puckett asserts that she has met this requirement by alleging several instances of interference with an official proceeding in violation of 18 U.S.C. § 1512, which is included in this list of "predicate acts." Puckett alleges that Eastman violated this section by intimidating witnesses prior to their testifying before the THRC. However, 18 U.S.C. § 1515(a)(1) (1987) defined "official proceeding" for purposes of § 1512 in the following manner:

(a) As used in sections 1512 and 1513 of this title and in this section—

(1) The term "official proceeding" means—

(A) a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, or a Federal Grand Jury; and

(B) a proceeding before the Congress; or

(C) a proceeding before a Federal Government agency which is authorized by law[.]

The issue, therefore, is whether proceedings before the THRC are to be considered "official proceedings" as defined by § 1515(a)(1).

Puckett argues that, because Tennessee is a deferral state, it was conducting an investigation on behalf of the EEOC; therefore, the proceedings before the THRC should be considered "proceeding[s]

before a Federal Government agency." Puckett cites no authority for this assertion, and further provides no indication of the nature of the arrangement or relationship between the EEOC and the THRC. Puckett's conclusory assertion is therefore unpersuasive, especially when considered in light of several arguments which support a more restrictive reading of § 1515(a)(1). First, it is doubtful that a state employment commission hearing in a deferral state was contemplated by this section, as § 1515 provides definitions for federal statutes which guard the integrity and effectiveness of proceedings over which a federal body clearly has authority. It should be apparent that Congress, in enacting this definitional section, did not exhibit the same concern with respect to bodies without a federal character, and with respect to which the states may themselves vindicate the same interest. Second, it is also instructive to make reference to 18 U.S.C. § 6, which defines "agency" for the purposes of Title 18. *United States v. Clift*, 834 F.2d 414 (4th Cir.1987). Section 6 provides:

As used in this Title:

The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.

The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

Obviously, this definitional provision makes no mention of state proceedings to which a federal commission has deferred; moreover, the deferral contemplated by Title VII is a limited deferral, as the EEOC only temporarily defers to a supplementary, not a substitute, state proceeding. Further,

allowance is made for the statute to be read more restrictively, although no such leeway is indicated for the definition of "agency" to be given a liberal interpretation. Therefore, we conclude that Puckett has not established violations of 18 U.S.C. § 1512 which might serve as predicate acts and, thus, has not met the statutory requirement of stating a "pattern of racketeering activity."

## V.

Finding no merit in any of Puckett's other contentions, we affirm the judgment of the district court.