Lester B. EASTER, Plaintiff,

v.

MARTIN MARIETTA ENERGY
SYSTEMS, INC., Defendant.

Civ. No. 3-90-0639.

United States District Court,
E.D. Tennessee, N.D.

Oct. 29, 1991.

Dorothy Stulberg, Oak Ridge, TN, for plaintiff.

E.H. Rayson, Knoxville, TN, for defendant.

## MEMORANDUM OPINION

JARVIS, Chief Judge.

This is an action for damages and injunctive relief pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Tennessee Human Rights Commission Act, *Tennessee Code Annotated* §§ 4–21–101, *et seq.* ("THRCA"). The plaintiff alleges that he was discriminated against because of his age when he was not selected for the position of pipefitter in 1988. This matter is presently before the court on defendant's motion for summary judgment, and argument was initially heard on October 1, 1991. Because defendant filed two affidavits[1] prior to argument, the court granted plaintiff's motion for additional time, *i.e.*, until the morning of trial, to obtain additional affidavits in support of his position. After reviewing the pleadings, briefs, affidavits, deposition excerpts, documentation, and the applicable law, the court granted defendant's motion on the morning of trial. This opinion shall serve to clarify the court's ruling.

### I.

The following facts are undisputed or, if disputed, are viewed in a light most favorable to plaintiff. Mr. Easter alleges that he applied for a journeyman pipefitter position with the defendant in 1983. In November, 1987, plaintiff and other pipefitters were interviewed by a three-member committee comprised of division supervisors [*see* Doc. 11, ¶ 2; Doc. 12, ¶ 2]. At that time, plaintiff was 51 years old. The interview procedure involves four parts and normally takes between one and two hours to complete [*see* Doc. 11, ¶ 3]. The four factors considered most important during the interview process are formal piping apprenticeship training, additional mechanical training, the knowledge and skills demonstrated in the blue print reading and technical questions exercise, and

the candidate's total trade related experience [*see id.*, ¶ 4]. Candidates also receive additional credit for substantial work experience which closely matches the work of the Oak Ridge National Laboratory ("ORNL") [*see id.*].[2]

Each interviewer rates the candidates on a scale of one to ten (with ten being the highest score) on each of the rating factors [*see* Doc. 11, ¶ 5]. Each interviewer's scores are added and then averaged for the candidate's final score [*see id.*]. Each candidate is then ranked on a list of qualified candidates according to their final score with some adjustments being made depending on the overall strength of the candidates [*see id.*].

The final ranking of candidates as agreed on by the committee members is then forwarded to Robert Sherlin, the administrative assistant of the plant and equipment division ("P & E") [*see id.*, ¶ 6]. In turn, Mr. Sherlin distributes the list to department superintendents, who select pipefitters from the list [*see id.*].

The final ranking by the committee is not a formal hiring list [*see id.*; Doc. 15, ¶ 5]. Each superintendent reviews each candidate's qualifications in depth with a view toward selecting the best suited person for the vacancy [*see* Doc. 15, ¶ 5]. If a pipefitter is ranked lower than another candidate on the interview list, but is considered better suited for the particular vacancy, then the superintendents are not precluded from hiring the better suited candidate simply because the interview committee may have ranked him "lower" on the list [*see id.*, ¶¶ 4–5].

The committee that interviewed plaintiff in November, 1987 consisted of E. Wayne Castleberry, Charles R. Kirkpatrick, and Frank Barnes[3] [*see* Doc. 12, ¶ 2]. Several candidates had also been interviewed in June of 1987, but ORNL delayed the hiring of any

---

**1.** Specifically, defendant filed the affidavit of Patricia L. McNutt [Doc. 30] and the supplemental affidavit of Charles R. Kirkpatrick [Doc. 31].

**2.** Defendant manages and operates five facilities located in three states, under contract with the United States Department of Energy, including ORNL [*see* Doc. 16, ¶ 1]. ORNL's plant and equipment division manages the everyday opera-

tion of ORNL, from building maintenance to fabrication of equipment used in scientific experiments [*see id.*, ¶ 2]. Pipefitters are employed at ORNL in a number of diverse capacities [*see* Doc. 15, ¶ 3].

**3.** Mr. Barnes has retired [*see* Doc. 14, ¶ 5].

pipefitters because of a labor strike [*see* Doc. 11, ¶ 8]. After the strike ended, P & E interviewed several more pipefitter candidates in November, 1987, including plaintiff [*see id.*].

Douglas Roberts and Buddy Craig Martin were among the candidates interviewed in June, 1987, and each was rated "7" by each member of the committee [*see* Doc. 11, ¶ 10]. Steven Pittman was also interviewed in June, 1987, and he was rated "7 +" by two members of the committee and "7" by the third [*see id.,* ¶ 12]. As noted earlier, plaintiff was interviewed by the committee in November, 1987 and was rated "7 +" by each member of the committee [*see* Doc. 12, ¶ 4].

Following the November interviews, the committee ranked the candidates from both the June and the November interview sessions [*see* Doc. 11, ¶ 9]. The ranking of each candidate was based on the candidate's rating and the interviewer's perception of how the candidate compared to the other candidates [*see id.,* ¶ 10; Doc. 12, ¶ 5]. In evaluating both the June and November candidates, the committee determined that Mr. Roberts and Mr. Martin were stronger candidates than their ratings reflected because the candidates interviewed in June were a "particularly strong" field of candidates, thereby causing these individuals to be compared against a higher standard than those candidates interviewed in November [*see* Doc. 11, ¶ 10; Doc. 12, ¶ 6]. Consequently, the committee was of the opinion that these candidates should be ranked higher on the list than their original ratings indicated and further agreed that they should be ranked third and fourth on the final list of candidates [*see id.*]. Plaintiff was ranked fifth on the list and Mr. Pittman was ranked sixth [*see* Doc. 11, ¶¶ 11–12]. It is undisputed that Messrs. Roberts, Martin and Pittman were less than age 40 at the time of their interviews and that plaintiff was age 51 at the time of his interview.

After the November, 1987 interviews, the list of qualified candidates was compiled and submitted to Mr. Sherlin, who in turn distributed the list to the department superintendents [*see* Doc. 14, ¶ 3; Doc. 12, ¶ 7]. In December, 1987 and January, 1988, D. Neal Smith, the superintendent of research services at P & E, sought to fill a pipefitter vacancy in his department [*see* Doc. 15, ¶ 5]. Superintendent Smith reviewed the list of 12 names provided to him by the interviewing committee [*see id.*]. It is undisputed that the first four candidates on the list had already been hired by defendant. Plaintiff, who was fifth, was therefore at the top of this list. Because plaintiff had been previously employed by Union Carbide Corporation ("Union Carbide"), the defendant's predecessor, Superintendent Smith contacted Mr. Kirkpatrick about obtaining information from plaintiff's prior employment file [*see* Doc. 11, ¶ 14]. Mr. Kirkpatrick in turn requested that Mr. Sherlin obtain plaintiff's employment file relating to his previous employment at the Y–12 Plant [*see* Doc. 14, ¶ 6]. That file contained a performance rating sheet which rated plaintiff as "poor" in quantity and attitude and as "fair" in quality, attendance, cooperation, and reliability [*see* Doc. 14, ¶ 6 and attachment]. Moreover, the form reflected the following comment by plaintiff's supervisor: "The employee had a very bad attitude. He was always finding fault with the Company. He was very hard to communicate with. He failed to give Company termination notice." [*See* Doc. 14, attachment]. Mr. Sherlin advised Mr. Kirkpatrick of the contents of this evaluation and sent him a copy [*see* Doc. 14, ¶ 7]. Mr. Kirkpatrick in turn relayed the substance of this evaluation to Superintendent Smith [*see* Doc. 11, ¶ 16].

Superintendent Smith testifies that plaintiff's poor evaluation was a "significant factor" in his decision not to hire plaintiff [*see* Doc. 15, ¶ 6]. However, this was not the only factor. Superintendent Smith further testifies that he did not hire plaintiff because of his lack of formal apprentice training as a pipefitter [*see id.,* ¶ 7]. On that issue, Superintendent Smith testifies as follows:

Formal apprentice training is important because pipefitters in my department are required by Department of Energy orders to complete performance based training related to their work. My experience has been that pipefitters who have had formal apprentice training are better able to meet

the requirements of performance based training.

[See id.]. Superintendent Smith further noted that plaintiff's experience was mostly in construction work, and that he was of the opinion that because "a construction pipefitter often does not have the broad spectrum of piping experience required of work in the research services department, I have not hired construction pipefitters who do not have formal apprentice training or equivalent." [See id., ¶ 8].

Accordingly, Superintendent Smith decided to hire Mr. Pittman, who was ranked sixth on the list (directly below plaintiff), because he had formal apprentice training and good working experience [see id., ¶ 9]. Moreover, Superintendent Smith had not received any unfavorable information concerning any prior employment record [see id.]. Finally, it must be emphasized that at the time Superintendent Smith discussed plaintiff's qualifications with Mr. Kirkpatrick, he was not aware of plaintiff's age; therefore, age was not a factor in his decision not to hire plaintiff [see id., ¶ 10].

In April, 1988, additional pipefitter candidates were interviewed and a new list of qualified candidates was generated [see Doc. 31, ¶ 8]. Because the interviewing committee was now aware of plaintiff's poor evaluation from his previous work at the Oak Ridge facilities, this evaluation was utilized in the subsequent ranking [see id.]. Accordingly, plaintiff was ranked seven on a list of ten candidates [see id. and attached exhibit]. The only individual hired from this new list was R.L. Wade, a minority candidate who was ranked fourth on the list [see id.]. Mr. Wade was employed pursuant to the Affirmative Action Program required by its contract with the Department of Energy [see id.; see also Doc. 30, ¶ 2].

In accordance with defendant's policy, plaintiff's 1987 application was retained at its central staffing office for one year, as were applications of other pipefitter candidates not interviewed or hired.[4] [See Doc. 22, Defendant's Response to Plaintiff's Third Interrogatory]. Plaintiff did not submit another ap-

plication until February, 1991 [see Doc. 31, ¶ 6]. Therefore, while plaintiff's name remained on the list of pipefitter candidates who were considered for openings from 1987 to 1991, plaintiff was not actively considered for such a job until 1991 when he submitted a new application [see generally, Doc. 31]. Plaintiff has not been hired by defendant to date.

On December 2, 1988, plaintiff filed an affidavit with the Equal Employment Opportunity Commission ("EEOC") claiming that defendant discriminated against him on the basis of his age [see Doc. 10A, Ex. 1]. On February 19, 1990, the Tennessee Human Rights Commission ("THRC") concluded its investigation of that charge and determined "that there is not reasonable cause to believe that allegation to be true." [See Doc. 13, Ex. 1]. On May 9, 1990, the EEOC determined that THRC's resolution of the charge was in accordance with EEOC procedures [see id., Ex. 2]. The instant complaint was filed on August 6, 1990 [see Doc. 1].

**II.**

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment

---

4. Defendant's central staffing office receives thousands of applications and has hundreds of applications for pipefitter positions on file at any one time [see Doc. 31, ¶ 4].

may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Finally, it must be noted that summary judgment is not necessarily inappropriate in an age discrimination suit. *Kendall v. Hoover Company*, 751 F.2d 171 (6th Cir.1984); *see also, Wooden v. Board of Education of Jefferson County, Kentucky*, 931 F.2d 376 (6th Cir.1991) (district court's entry of summary judgment in favor of defendant in ADEA case upheld).

■ In considering defendant's pending motion under the ADEA, the court must apply the same analysis applied to discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, according to *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Chappell v. GTE Products Corporation*, 803 F.2d 261, 265 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Under this analysis, plaintiff must first establish a *prima facie* case as follows:

(1) that he was a member of the protected class, *i.e.*, that he was between 40 and 70 years old;

(2) that he applied and was qualified for a job for which the employer was seeking applicants;

(3) that, despite his qualifications, he was rejected; and

(4) that after his rejection, a younger person was hired to fill that position. *See Wooden*, 931 F.2d at 378. Although a *prima facie* case is one where there is sufficient evidence to withstand a motion for summary judgment or for a directed verdict, *LaGrant v. Gulf & Western Manufacturing Company, Inc.*, 748 F.2d 1087, 1090 (6th Cir.1984), it is not a "complete shield" against summary judgment. *See Wooden*, 931 F.2d at 379. If plaintiff is able to establish a *prima facie* case of age discrimination, however, the burden of production of evidence then shifts to the defendant to articulate some legitimate, non-discriminatory reason for its decision not to hire plaintiff. *Id.* at 378. Once the defendant articulates a legitimate, non-discriminatory reason for not hiring plaintiff, then the burden shifts back to plaintiff to show that the defendant's reasons were pretextual. *Id.* Although the burden of production shifts, the burden of persuasion remains at all times with plaintiff. *Id.* The ultimate issue is whether age was a determining factor in the employment decision which adversely affected the claimant. *Id.* (citing *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1179 (6th Cir.1983)).

■ In the instant case, the court finds that plaintiff has established a *prima facie* case based on the following facts:

1. Plaintiff was 51 years old at the time of the November, 1987 interview and was 52 years old when other younger applicants were hired for the pipefitter position;[5]

2. Plaintiff applied for and was qualified for the job of pipefitter;[6]

3. Plaintiff was not hired for a position of pipefitter with the defendant; and

4. Defendant hired younger individuals for the position of pipefitter.[7]

---

5. Plaintiff's date of birth is December 27, 1935.

6. The proof is undisputed that plaintiff received a rating of "7 +" from each of the three members of the interviewing committee. Plaintiff's scores were originally the third highest of the applicants interviewed in June and November, 1987. Two of the other candidates—Douglas Roberts and Buddy Craig Martin—were rated a "7" by each member of the committee in June of 1987. Their rating was subsequently increased, however, to reflect the interviewing committee's opinion that the candidates interviewed in June were particu-

larly strong; thus, Mr. Roberts and Mr. Martin were compared against a higher standard than those candidates interviewed in November [*see* Doc. 11, ¶ 10].

7. The ages of the four individuals ranked ahead of plaintiff on the first hiring list [*see* Doc. 11, Ex. 1] are as follows: J.L. Norris, Age 38; Max D. Cronan, Age 37; Douglas A. Roberts, Age 28; and Buddy Craig Martin, Age 34 [*see id.; see also* Doc. 16, Ex. 1]. All of these individuals except for Mr. Norris were hired by defendant on January 11, 1988; Mr. Norris was hired on February

■ In response to plaintiff's *prima facie* case, defendant articulates two legitimate, non-discriminatory reasons why it did not hire plaintiff. First, plaintiff's previous employment record with defendant's predecessor, Union Carbide, reflected a poor work performance. Second, plaintiff lacked formal training compared with the applicants who were selected at the time of plaintiff's consideration. The burden now shifts back to plaintiff to establish that these reasons are merely pretextual. For the following reasons, the court concludes that plaintiff has failed to carry this burden by showing that age was a determining factor.

At the outset, it must be noted that one of plaintiff's arguments questions the order of ranking of candidates on the first hiring list. Specifically, plaintiff contends that Mr. Roberts and Mr. Martin initially scored lower than plaintiff; therefore the purported reasons offered by defendant through the committee members as to why those two candidates were ranked higher than plaintiff are suspect. This is especially true regarding Mr. Roberts because his interview report reflects "[r]eservations" by the interviewers as to his "ability or willingness to fit in ... and personality conflict." [*See* Doc. 28, Ex. A]. These comments were subsequently crossed out [*see id.*]. Even assuming, *arguendo*, that neither candidate should have been ranked higher than plaintiff, this argument addresses itself only to plaintiff establishing a *prima facie* case—a burden which the court has already found that plaintiff has met. In other words, it makes no difference whether defendant hired someone ranked higher or lower than plaintiff on the first hiring list if plaintiff was otherwise qualified for the job and those other individuals were younger than plaintiff. Even if plaintiff had been ranked first on that list, plaintiff must still establish that discrimination was a determinative factor in his not being hired. Regardless of plaintiff's position on the list, the uncontradicted proof is that Superintendent Smith, once having become aware that plaintiff had previously worked at the Oak Ridge

facility, would have requested plaintiff's prior employment file as this was the normal procedure [*see* Doc. 15, ¶ 4; Doc. 11, ¶ 7]. It must also be emphasized that no other candidate on that list had previously worked at the Oak Ridge facility [*see* Kirkpatrick deposition at p. 28, attached to Doc. 28]. No other candidate therefore generated an employment record at the facility which could be reviewed. Because other candidates were not similarly situated, plaintiff cannot assert disparate treatment on this particular basis. *See Merkel v. Scovill, Inc.*, 787 F.2d 174, 178 (6th Cir.1986) (to establish disparate treatment, plaintiff must show that similarly situated applicants were treated differently).

Furthermore, in analyzing defendant's purported legitimate, non-discriminatory reason for not hiring plaintiff, it must be emphasized that plaintiff's prior work record did in fact reflect poor performance. In short, it reflected nothing else. Not only was plaintiff rated "poor" in two categories of performance and "fair" in the other four categories,[8] but also the evaluation indicated that plaintiff had a "very bad attitude" and that he failed to give Union Carbide notice of his termination.

Nevertheless, the court will address several issues raised by plaintiff regarding defendant's use of this evaluation in denying plaintiff a job. The court initially notes that the evaluation in question was completed on June 27, 1974. Plaintiff was 38 years old at that time. Thus, plaintiff's evaluation occurred at a time before plaintiff was in a protected age category. Any claim regarding age discrimination as to the evaluation itself therefore evaporates.

■ Plaintiff primarily contends that the evaluation was not accurate. Nevertheless, even if the evaluation were not accurate, the undisputed facts are that Superintendent Smith believed the form to be accurate and that he relied on it in deciding not to hire plaintiff. "A reason honestly described but poorly founded is not a pretext as that term

29, 1988 [*see* Doc. 16, Ex. 1]. More importantly, Mr. S.H. Pittman, Age 35, was ranked sixth on this list (directly below plaintiff) and was hired on March 14, 1988 [*see id.*].

8. Defense counsel analogizes these ratings as the equivalent of receiving two "F's" and four "D's" on an A B C D F grading scale [*see* Doc. 29, p. 3].

is used in the law of discrimination." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559–61 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987) (quoted with approval in *McDonald v. Union Camp Corporation*, 898 F.2d 1155, 1162 (6th Cir. 1990)). Furthermore, prior employment evaluations may legitimately be considered in evaluating applicants for employment. *Wooden*, 931 F.2d at 378–79. In *Wooden*, the Sixth Circuit granted summary judgment for the employer in an age discrimination action based on the employer's evidence that it relied on plaintiff's prior employment evaluation in determining that other applicants were better qualified. *Id.* Even more recently, the Sixth Circuit held that poor work performance is a legitimate, non-discriminatory reason for dismissing an employee. *See Danielson v. City of Lorain*, 938 F.2d 681, 683 (6th Cir.1991).

■ Additionally, plaintiff argues that the defendant should have relied on more recent evaluations of his work at the Tennessee Valley Authority instead of relying on a prior company evaluation more than 15 years old. However, the law is well settled that the defendant is entitled to adopt its own procedures for determining the qualifications of applicants. "The ADEA was designed to protect older workers from arbitrary classifications on the basis of age, not to restrict the employer's right to make *bona fide* business decisions. *Blackwell*, 696 F.2d at 1179. Plaintiff does not therefore raise a genuine issue of material fact by challenging defendant's judgment in determining how best to evaluate the qualifications of applicants. *See McDonald*, 898 F.2d at 1162 (employee does not raise a factual dispute by alleging employer made a poor business decision). While plaintiff makes an appealing argument that it is unfair to evaluate him based on this extremely old employment record as opposed to more recent evaluations, the ADEA provides plaintiff no relief. The question for the court (or for a jury) is not whether the plaintiff was treated fairly, but whether discrimination has occurred. *See Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1117 (6th Cir.1980). Moreover, in this case, although plaintiff may legitimately complain that he was treated unfairly because of the age of the evaluation, he has no basis whatsoever for complaining he was treated unfairly because of its contents.

Because the court finds that plaintiff's previous poor work record fully satisfies defendant's burden under the *McDonnell Douglas* analysis of articulating a legitimate, non-discriminatory reason for failing to hire plaintiff and that it was not pretextual, it will not be necessary to address the merits of defendant's argument that plaintiff's lack of formal training also contributed to defendant's decision. In the court's opinion, the evaluation which Superintendent Smith consulted provided *no* basis whatsoever for considering plaintiff for employment as a pipefitter or any other position at its facility. Thus, the court concludes that age played no part in defendant's decision in early 1988 to hire the four individuals ranked higher than plaintiff on the first hiring list, as well as hiring Mr. Pittman, who was ranked lower than plaintiff on that list.

Another event about which plaintiff initially complains is the hiring of Mr. Wade, a minority candidate who was employed pursuant to the Affirmative Action Program required by the defendant's contract with the Department of Energy. Although plaintiff appeared to concede during argument that defendant's hiring of Mr. Wade did not form any basis for this lawsuit, the court notes for the record that not only was Mr. Wade ranked higher than plaintiff on the second hiring list,[9] but also the defendant's com-

---

9. Mr. Wade was ranked fourth; plaintiff was ranked seventh [*see* Doc. 31, ¶¶ 7 and 8]. This second hiring list was generated after the committee was apprised of plaintiff's previous employment record [*see id.*, ¶ 7]. Plaintiff attempts to raise a genuine issue of material fact with Mr. Kirkpatrick's supplemental affidavit [Doc. 31] by interpreting Paragraph 8 as saying the committee did not become aware of plaintiff's 1974 evaluation until April, 1988, a point in time after defendant had hired Mr. Pittman. Plaintiff's ar-gument does not reflect a fair reading of Mr. Kirkpatrick's affidavit. The primary point of that paragraph is that the committee, who was responsible for interviewing and ranking candidates, did not become aware of the 1974 evaluation until April, 1988 for purposes of ranking plaintiff. It therefore ranked plaintiff lower because of his poor work record on the second hiring list than it would have otherwise based solely on his "7 +" scores. However, the defen-

mendable decision to hire a minority candidate is a legitimate, non-discriminatory reason for not hiring plaintiff.

■ Finally, plaintiff complains that he was not considered for positions from 1983 to 1987. The court concludes, however, that any such claim is now barred by the statute of limitations. Plaintiff "must file a claim of ADEA violation with the EEOC 'within 300 days after the alleged unlawful practice occurred,' ... failing which, any suit under the ADEA filed in the federal district court will be dismissed as untimely." *Janikowski v. Bendix Corporation,* 823 F.2d 945, 947 (6th Cir.1987). Plaintiff did not file a charge until December 23, 1988. Thus, any complaint about alleged acts of discrimination occurring before 1987 are time-barred. "A discriminatory act which is not made the basis of a timely charge is the legal equivalent of a discriminatory act that occurred before the statute was passed ... separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

■ Similarly, the court concludes that plaintiff's state law claims are barred by the one-year statute of limitations set forth in *Tennessee Code Annotated* § 28–3–104. It is well settled that claims of age discrimination brought pursuant to the THRCA must be filed within the time period provided for in T.C.A. § 28–3–104. *Hoge v. Roy H. Park Broadcasting of Tennessee, Inc.,* 673 S.W.2d 157 (Tenn.Ct.App.1984). T.C.A. § 28–3–104 requires the action to be filed within one year after the cause of action accrued.

In *Puckett v. Tennessee Eastman Company,* 889 F.2d 1481 (6th Cir.1989), the court held that an action brought under the THRCA is not tolled while plaintiff's charge of discrimination is pending with the THRCA:

> Because the appropriate limitations period is one year, under the circumstances of this case, where [the plaintiff] chose the

administrative route and followed it through to the conciliation stage, a direct action in chancery court is barred. It is now established by *Hoge* that *Tenn.Code Ann.* § 28–3–104, the general statute for limitations for claims asserting a violation of federal civil rights, is applicable in actions under *Tenn.Code Ann.* § 4–21–311. Further, the Tennessee courts have read the Act to force an election between the administrative remedy and the judicial remedy, at least where an aggrieved individual has initiated the administrative process and pursued it to an administrative conclusion.

> ... However, once the administrative process had been pursued past the initial administrative conclusion that no actionable violation exists, Tennessee courts have made clear that the only way to get to court is through an administrative appeal.

889 F.2d at 1485–86. Therefore, once a plaintiff pursues a THRCA claim with the THRC beyond the time for filing a direct action in Chancery Court, plaintiff's only remaining course of action, if the administrative decision is unfavorable, is to file a petition for review within 30 days of the order in Chancery Court. T.C.A. § 4–21–307(f)(1).

In the instant case, plaintiff asserted discrimination with the EEOC on December 2, 1988. Plaintiff's complaint, filed on August 6, 1990 is therefore untimely. Thus, plaintiff's claims pursuant to the THRCA must be dismissed for this reason alone.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendant's motion for summary judgment [Doc. 10] be, and the same hereby is, GRANTED whereby summary judgment is ENTERED in favor of defendant and plaintiff's case is

---

dant, through Superintendent Smith and others, was aware of the 1974 evaluation earlier than April, 1988. The uncontradicted testimony of Superintendent Smith is that he hired Mr. Pitt-

man *after* he received plaintiff's prior work record [*see* Doc. 15, ¶¶ 6 and 9]. Thus, plaintiff's argument on this issue is unpersuasive.

DISMISSED. Rule 56, Federal Rules of Civil Procedure.